UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **LJL FOOD SERVICE, INC.**<br>**2101 E. MONUMENT STREET**<br>**BALTIMORE, MD 21205**<br><br>    PLAINTIFF,<br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>    DEFENDANT. | ) <br> ) <br> ) <br> ) <br> ) CIVIL NO._____<br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR JUDICIAL REVIEW

Plaintiff LJL Food Service, Inc. d/b/a University Deli, 2101 E. Monument Street, Baltimore, Maryland 21205 ("University Deli" or "Store"), by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1. This action seeks judicial review of the Final Agency Decision, dated September 16, 2019, issued by USDA's Food and Nutrition Service ("FNS"), affirming FNS's Retailer Operations Division's denial of University Deli's application to participate as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP") ("FAD").

## PARTIES

2. Plaintiff LJL Food Service, Inc. is a Maryland corporation with its principal place of business in this judicial district in Baltimore City. Plaintiff LJL Food Service, Inc. operates

University Deli, a retail food store located at 2101 Monument Street, Baltimore, Maryland 21205. University Deli is located in a deeply impoverished neighborhood in Baltimore City.

3. University Deli is a "Retail Food Store" as such term is defined in 7 C.F.R. §271.2.

4. Defendant United States of America is the federal government.

5. United States Department of Agriculture ("USDA") is an executive branch department of the federal government.

6. FNS is an agency of the USDA.

7. FNS administers and has promulgated regulations governing the SNAP pursuant to powers delegated by Congress in Section 4 of the Food and Nutrition Act of 2008. 7 U.S.C. §2013.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this *de novo* judicial review action of FNS's FAD pursuant to 7 U.S.C. §2023, 7 C.F.R. §279.7, and 28 U.S.C. §§1331, 1346.

9. This Court has personal jurisdiction over the parties pursuant to 7 U.S.C. §2023.

10. This Court has jurisdiction to grant declaratory and further necessary and proper relief pursuant to Federal Rules of Civil Procedure 57 and 65.

11. Venue in this district is proper under 7 U.S.C. §2023 and 28 U.S.C. §§1391(b) and (e) because University Deli, the retail food store that is the subject of this action, is located in Maryland within this judicial district and division. Venue is also proper because the United States of America is deemed a resident of this judicial district and has consented to suit in this judicial district in SNAP judicial review proceedings. 7 U.S.C. §2023(a)(13).

12. University Deli has exhausted any and all administrative remedies required prior to the institution of this action.

## THE SUPPLEMENTAL NUTRITION ASSSTANCE PROGRAM

13. Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 41 million Americans and more than 665,000 Marylanders. More than 15% of households in Baltimore City participate in SNAP.

14. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. §2011.

15. Pursuant to SNAP regulations set forth in Part 278 of Title 7 of the Code of Federal Regulations, FNS has authority to authorize and disqualify retail food stores from participation in SNAP.

## FACTUAL ALLEGATIONS

16. University Deli is a retail food store located in Baltimore's Northeast Market.

17. University Deli sells a wide variety of staple food and other SNAP-eligible items.

18. University Deli first received its SNAP authorization on June 11, 2014.

19. Between June 11, 2014, and November 29, 2024, University Deli was authorized by FNS to participate in SNAP as an authorized retailer.

20. On May 29, 2024, FNS's Retailer Operations Division ("ROD") withdrew the Store's authorization based on its determination that it was "not a retail food store as defined by FNS's SNAP regulations." See FNS's Final Agency Decision, dated October 30, 2024, at 2. ROD's May 29, 2024, determination was affirmed on October 30, 2024, and became final 30 days later.

21. Between November 2024 and May 2025, the Store made substantial business changes to its operations that resulted in material differences in the percentage of sales in the staples, accessories, and cold prepared foods categories.

3

22. Subsequent to implementation of the Store's business changes, it submitted an application for SNAP authorization to FNS on May 23, 2025.

23. On June 4, 2025, in anticipation of a request for sales documentation from FNS, the Store submitted sales summary reports from the Store's registers for a one-week period in late April 2025. Additionally, the Store provided a detailed explanation of the eligible food items sold at University Deli.

24. On June 25, 2025, the Store sent end of day sales summaries and a sales spreadsheet listing its daily sales of staples, accessories, cold foods prepared on-stie, hot foods, and heating charges between June 15 and 21, 2025.

25. University Deli's submission to FNS revealed that it transacted $16,067.98 in business between June 15 and 21, 2025.

26. More than 60% of University Deli's gross receipts consisted of staples, accessories, and non-foods. Conversely, less than 40% of the Store's gross receipts were of hot or cold prepared foods made on-site, pre-sale or post-sale.

27. On July 3, 2025, the Store submitted its sales tax returns for a 12-month period to FNS.

28. During early July 2025, an FNS contractor employed by Manhattan Strategy Group conducted a store visit at University Deli.

29. On August 4, 2025, FNS issued a letter to University Deli denying its application for SNAP authorization ("Denial Letter"). The Denial Letter provides that "[t]he Food and Nutrition Service has determined that your firm does not meet the definition and requirements of a retail food store as set forth in Sections 271.2 and 278.1(b)(1) of the SNAP regulations, and is therefore ineligible to participate in SNAP as an authorized retailer."

30. The Denial Letter further stated that "[i]t is the determination of FNS that your firm is primarily a restaurant, because more than 50 percent of your total gross retail sales are from 'heated foods' and/or 'prepared foods.' 'Heated foods' are foods cooked or heated by the retailer before or after purchase. 'Prepared foods' are hot or cold foods not intended for home preparation and/or home consumption, including prepared foods that are consumed on the premises or sold for carryout.

31. The Denial Letter also stated: "[t]his determination is based on information provided either on your authorization application and/or information obtained from a visit to your store on July 08, 2025."

32. On August 8, 2025, University Deli timely requested Administrative Review of FNS's withdrawal of its SNAP authorization.

33. On August 13, 2025, FNS's Administrative and Judicial Review Branch issued a letter accepting University Deli's timely request for administrative review, assigned Administrative Review Officer ("ARO") Rich Proulx to the case, and assigned it ARB Case No. C0304872.

34. On September 12, 2025, University Deli submitted its response in support of its Request for Administrative Review.

35. On September 16, 2025, only two business days after submission of the Store's response in support of its request for administrative review, FNS issued the FAD. A copy of the FAD is attached hereto as Exhibit A.

36. The FAD affirmed FNS's denial of the Store's SNAP authorization based on the determination that the Store was a restaurant. The FAD contained a scant ½ page of "Analysis and Findings."

37.    The FAD noted that the "central issue is whether actual sales of prepared foods comprise more than 50 percent of the store's total gross retail sales." FAD, at 3.

38.    The FAD further contended that "[t]here is no doubt that staple food items may be delivered to the store fresh, raw and unprepared, and are available to customers that way. However, the store presents itself and is set up primarily as a restaurant; thus, it is reasonable to expect that fresh food products do not outsell prepared and cooked food products at this establishment." Id.

39.    The FAD also concluded that "[t]he evidence in the inspection report and photographs of the July 8, 2025 store visit, as well as the information provided by Appellant, supports that Appellant is primarily a restaurant." Id.

40.    The FAD devoted a paragraph to discussion of the Store's sales of cold drinks. The FAD, at 3, stated:

> Appellant argues that drinks that are simply portioned into cups and affixed with lids by retail staff are not prepared foods. According to RPMD Policy Memorandum 2020-06 "Retailer Eligibility – Prepared Foods and Heated Foods," the definition of cold prepared foods includes foods that are simply portioned by the retailer, such as meat and cheese platters or ice cream placed into a cup or bowl. As such, the drinks individually portioned by Appellant into cups and affixed with lids would be considered cold, prepared foods. These items are reasonably understood to be intended for immediate consumption rather than for home preparation and consumption. That the lids include holes for straws further supports that these items are intended for immediate consumption, regardless of whether the retailer inserts straws at the time of purchase or whether customers do so after purchase.

41.    Finally, FNS concluded that "[t]he store is set up primarily to sell hot and/or cold prepared, ready-to-eat foods that are intended for immediate consumption or for carry-out, and require no additional preparation. Although food items in Appellant's store may be available for sale fresh, it is more likely true than not true that the majority of foods in the store are actually sold prepared and/or hot and ready-to-eat." *Id.* at 4.

42. Based on its conclusions, ARO Proulx concluded that "[a]ccording to 7 CFR § 278.1(b)(1) of the SNAP regulations, such a store is considered a restaurant and is not eligible for SNAP participation as a retail food store. Therefore, Appellant's store does not qualify as a retail food store for purposes of SNAP participation."

43. The crux of the FAD relates to the Store's sales of cold drinks.

44. The FAD cites to RPMD Policy Memorandum 2020-06 ("RPMD Memorandum"). That policy memorandum is entitled "Retailer Eligibility – Prepared Foods and Heated Foods."

45. The portion of the RPMD Memorandum related to "Heated Foods" is irrelevant to this judicial review proceeding because the Store sells nearly no heated foods.

46. The RPMD Memorandum defines "Cold Prepared Foods" to include any food that:

- is made by the retailer (for example, food products that are assembled, cooked, mixed, or otherwise prepared by the retailer),

- is made or prepared by the retailer on the premises of the firm,

- is sold cold, *and*

- requires no additional preparation for immediate consumption.

*Id.* at 2.

47. The Store advised FNS during administrative proceedings that the Store's sold a variety of mixed, non-carbonated beverages, that all such beverages were purchased from a third party, were never made at the Store, were mixed off-site and brought to the Store in large containers where they were poured into clear dispensers that keep them chilled.

48. The Store further advised that it places those beverages into plastic cups and place lids thereon. University Deli also noted that it would never put straws into the cups.

49. The Store also provided customers with carrying containers purchased from Amazon that can fit up to four cups so its customers can carry them home (or elsewhere easily).

50. The Store has no tables or chairs at the Store for customers to drink beverages on-site and submits that its beverages are taken home for consumption. University Deli also does not have waiters, waitresses, or table service.

51. No support for the statement in the FAD that "it is more likely true than not true that the majority of foods in the store are actually sold prepare and/or hot and ready-to-eat." FAD, at 4.

52. The FAD also improperly relied upon a short site visit to the Store conducted by an FNS contractor on July 8, 2025. The FAD provides that "[t]he evidence in the inspection report and photographs of the July 8, 2025 store visit, as well as the information provided by Appellant supports that Appellant is primarily a restaurant."

53. No evidence exists supporting FNS's determination that "prepared foods" sold at University Deli were "not intended for home preparation or consumption."

54. All "prepared foods," including (but not limited to) cold beverages sold by University Deli were intended to be consumed at home.

55. University Deli is not a restaurant.

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

56. Plaintiff University Deli repeats and re-alleges paragraphs 1 through 55 as if fully set forth herein.

57. At all times relevant hereto, a majority of University Deli's gross receipts were from sales of items which were (1) not cooked nor heated on-site (pre-sale or post-sale); (2) not cold prepared foods; and (3) intended for home preparation of consumption.

58.     FNS does not have authority under the Food & Nutrition Act or its SNAP regulations to deny an application for SNAP authorization based on a policy memorandum.

59.     FNS does not have authority under the Food & Nutrition Act or its SNAP regulations to deny an application for SNAP authorization based on the RPMD Memorandum.

60.     The RPMD Memorandum provides, in a footnote, that "[t]he contents of this document do not have the force and effect of law and are not meant to bind the public or FNS in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies."

61.     The FAD's reliance upon the RMPD Memorandum is misplaced.

62.     The RMPD Memorandum *supports* granting University Deli's application for SNAP authorization because the requirements to be a "cold prepared food" are conjunctive and there is no dispute that it did not make any of the Store's cold beverages whatsoever.

63.     If the FAD correctly describes what a "cold prepared food" is, virtually all beverages that are not sold in bottles or cans are "cold prepared foods." Under that analysis, all meat, fish, poultry, seafood, fruit, and vegetable products that are cut into smaller portions in the Store are "cold prepared foods." Similarly, under FNS's interpretation of its regulations, all deli counter items (including meat and cheese) that are sliced on-site are "cold prepared foods."

64.     FNS lacks authority to deny an application for SNAP authorization unless evidence exists that establishes that a majority of a retailer's gross sales exceeds the sum of (1) foods cooked or heated on-site by the retailer before or after purchase; and (2) hot or cold prepared food not intended for home preparation or consumption.

65.     FNS improperly relied upon photographs of the Store, rather than exclusively relying upon sales data, in denying University Deli's application for SNAP authorization.

66. No FNS official or employee visited the Store at any time relevant hereto.

67. FNS improperly shifts the burden of proof onto retailers to show that they were not a restaurant.

68. FNS improperly shifted the burden of proof to University Deli to disprove that it is a restaurant in violation of the Food and Nutrition Act and FNS's SNAP regulations.

69. At no time has FNS promulgated a regulation that defines "cold prepared foods."

70. At no time has FNS promulgated a regulation that defines "home consumption."

71. At no time has FNS promulgated a regulation that defines "home preparation."

72. At no time has FNS promulgated a regulation that defines "for carryout."

73. FNS did not have a proper basis for denying University Deli's application for SNAP authorization.

74. A preponderance of the evidence that FNS considered in issuing the FAD did not support its decision to deny University Deli's application for SNAP authorization.

75. FNS's decision to deny University Deli's SNAP authorization was invalid, unreasonable, arbitrary and capricious, and unsupported by the administrative record and all other evidence available to it.

76. FNS's decision to deny University Deli's application for SNAP authorization should be reversed because FNS failed to properly consider all evidence submitted by the Store.

77. FNS's decision to deny University Deli's application for SNAP authorization should be reversed because FNS failed to properly consider the information the Store submitted in support of its application for SNAP authorization and in support of its request for administrative review.

78. FNS's denial of University Deli's SNAP authorization was not rationally related to any legitimate governmental interest.

79. FNS's denial of University Deli's SNAP authorization is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

80. FNS's denial of University Deli's SNAP authorization represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

81. FNS, in issuing the FAD, relied upon records and other information in FNS's possession which were never provided to University Deli despite requesting all such records in its FOIA Requests.

82. The FAD was not based upon any declarations or affidavits from a USDA or FNS official, employee, or contractor whose identity was disclosed to University Deli.

83. The FAD is FNS's final administrative determination related to the denial of University Deli's application for SNAP authorization.

84. The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§2023(a)(13), (15).

85. Judicial reviews pursuant to 7 U.S.C. §§2023(a) are not governed by the Administrative Procedure Act.

86. Judicial reviews pursuant to 7 U.S.C. §§2023(a) are not limited to the administrative record prepared by FNS.

87. Discovery is permitted during judicial review proceedings conducted pursuant to 7 U.S.C. §§2023(a).

88. The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

89. FNS denied University Deli's application for SNAP authorization in violation of the Food and Nutrition Act of 2008.

90. FNS denied University Deli's application for SNAP authorization in violation of FNS's SNAP regulations.

91. FNS's denied University Deli's application for SNAP authorization was premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. §278.1.

92. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to University Deli.

93. Plaintiff University Deli respectfully requests a *de novo* review of the FAD which affirmed FNS's withdrawal of its SNAP authorization.

WHEREFORE, Plaintiff University Deli respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a) Reversing the FAD;

(b) Vacating FNS's denial of University Deli's application for SNAP authorization;

(c) Preliminarily enjoining FNS from refusing to grant University Deli's application for SNAP authorization during the pendency of this action;

(d) Permanently enjoining FNS from refusing to grant University Deli's application for SNAP authorization based upon the Denial Letter and/or the FAD;

(e) Awarding University Deli an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(f)     Such other and further relief as the Court may deem just and proper.

          Respectfully submitted this 7th day of October 2025.

By:     */s/ J. Mason Weeda*
       Joseph Mason Weeda (D. Md. Bar No. 18276)
       Stewart D. Fried (application for admission forthcoming)
       Olsson Frank Weeda Terman Matz PC
       2000 Pennsylvania Avenue, N.W. # 4003
       Washington, D.C. 20006
       (202) 518-6326 – Direct Dial
       (202) 747-3140 – Facsimile
       sfried@ofwlaw.com

*Attorneys for LJL Food Service, Inc.*